IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

HORN LAKE CREEK BASIN
INTERCEPTOR SEWER DISTRICT                                      PLAINTIFF

VS.                           CIVIL ACTION NO. 3:19cv290-SA-JMV

CITY OF MEMPHIS, TENNESSEE                                      DEFENDANT

## COMPLAINT

### JURY TRIAL DEMANDED

Horn Lake Creek Basin Interceptor Sewer District files this Complaint asserting a cause of action for breach of contract and other remedies against Defendant City of Memphis, Tennessee.

### Parties

1. Plaintiff Horn Lake Creek Basin Interceptor Sewer District (the "District") is a legal entity organized under the laws of the State of Mississippi, formed for the purpose of providing wastewater (*i.e.*, sewage) collection and transportation services. Its principal place of business is 979 Rasco Road W, Southaven, Mississippi 38671. The District is a citizen of Mississippi.

2. Defendant City of Memphis, Tennessee (the "City") is a municipal corporation organized under the laws of the State of Tennessee with its principal place of business at 125 N. Main Street, Memphis, Tennessee 38103, and is therefore a citizen of Tennessee. The City may be served with process by delivering a copy of the summons and complaint to its chief executive officer, Mayor Jim Strickland, or to the city attorney, Bruce McMullen. FED. R. CIV. P. 4(j)(2), TENN. R. CIV. P. 4.04(8).

**Jurisdiction and Venue**

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States. The City has breached and/or repudiated its contract with the District, which breach and/or repudiation will injure the District by costing it an amount far exceeding $75,000.00, exclusive of interest and costs.

4. This Court has both specific and general personal jurisdiction over the City based on its sufficient constitutional contacts with the State of Mississippi and its entry into a contract with the District, a Mississippi citizen. This Court's personal jurisdiction over the City is further supported by the Mississippi long-arm statute, under which a nonresident entity "who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state" is subject to the jurisdiction of Mississippi's courts. MISS. CODE ANN. § 13-3-57.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial portion of the performance of the contract at issue takes place in this judicial district.

**Facts**

6. The District was formed on March 6, 1971, pursuant to Mississippi House Bill No. 651. Its purpose was, and continues to be, the provision of wastewater collection services to the citizens and businesses of Southaven, Mississippi, Horn Lake, Mississippi, and parts of unincorporated DeSoto County, Mississippi. The District is the exclusive provider of public wastewater collection to these customers.

7. The Environmental Protection Agency ("EPA") was organized on December 4, 1970. One of its earliest initiatives was a program under Section 208 of the Clean Water Act designed to encourage wastewater collection and treatment on a regional scale.

8. Under its Section 208 program, EPA incentivized regionalization of wastewater treatment plans by giving priority funding to metropolitan areas organized into "Section 208 planning areas." The areas served by the District were included within the City's Section 208 planning area.

9. Upon information and belief, the City applied for and received a federal grant to construct a wastewater treatment facility – the T.E. Maxson Treatment Plant – as part of this program.

10. Upon information and belief, the City has applied for and received various other federally-funded loans and grants to assist with repairs, maintenance, and operation of the T.E. Maxson plant throughout the period of the parties' contractual relationship.

11. Consistent with EPA's Section 208 program and the federal preference for regionalization of wastewater treatment plans, the City and the District entered into an agreement on February 6, 1075 ("1975 Agreement") for the collection, treatment, and disposal of sewage wastewater in the Horn Lake Creek Basin (attached hereto as Exhibit "A").

12. EPA's Section 208 program had an economic basis as well as an environmental one. Treating wastewater is expensive, and economies of scale are important to make costs manageable. The 1975 Agreement, therefore, provided myriad benefits to both parties: the District received wastewater treatment services, while the City increased its number of customers and volume of wastewater while collecting the rates owed to it by the District, thereby both reducing and sharing the cost of wastewater treatment.

13. Under the 1975 Agreement, the parties agreed to construct wastewater collection and transport lines on a coordinated schedule. That is, the District constructed a wastewater collection and transportation system specifically designed to transport wastewater north to the

City's collection system in reliance on the 1975 Agreement. These buried pipes cannot be repurposed for any use other than transporting wastewater to the City.

14. Under the 1975 Agreement, the District was to transfer ownership of transported wastewater to the City at a metering station to be constructed. The City treats the District's wastewater at the T.E. Maxson plant.

15. The 1975 Agreement included the District agreeing to pay the City for treatment of the District's wastewater on a volumetric basis, and included a mechanism by which the City could adjust rates annually based on its costs.

16. Using current rates under the 1975 Agreement, the District paid the City approximately $1,400,000.00 for wastewater treatment in 2018 alone. The District has paid the City over $29,000,000.00 for wastewater treatment since 1975.

17. The 1975 Agreement states: "This agreement shall remain in effect for forty (40) years from the date hereof and at the expiration of said time shall be subject to review and change agreeable to both parties."

18. On September 22, 1983, the parties entered into a Supplemental Agreement ("1983 Agreement," attached hereto as Exhibit "B") amending the parties' relationship with respect to "the regulations affecting Industrial Dischargers and the manner in which they are to be administered."

19. The 1983 Agreement restarted the 40-year period referenced in the 1975 Agreement so that the 40-year period now ends on September 22, 2023.

20. Under the 1983 Agreement, it was "agreed that only the provisions of the February 6, 1975 Agreement that conflict in intent with the provisions set out herein are

amended, and the remainder of said Agreement shall remain unaltered and fully binding on the parties."

21. Therefore, the provision in the 1975 Agreement that the end of the forty-year period signified only that the Agreement would be "subject to review and change agreeable to both parties" remained unaltered and fully binding on the parties.

22. On March 28, 2018, the City's Director of Public Works Robert Knecht sent a letter to the District, declaring that the City would no longer provide wastewater treatment services to the District after September 22, 2023 (attached hereto as Exhibit "C"). This unilateral letter is a breach, anticipatory breach, and/or repudiation of the 1975 and 1983 Agreements, and other words, conduct, acts and omissions of the City.

23. The District, the Cities of Southaven and Horn Lake, and DeSoto County requested meetings with Mayor Jim Strickland and other representatives of the City in an attempt to reach an amicable agreement to continue the parties' mutually beneficial wastewater treatment relationship under the 1975 and 1983 Agreements, which include the implied duty of good faith and fair dealing, beyond September 22, 2023.

24. After a meeting on August 13, 2018, during which the District offered to increase its volumetric rate after September 22, 2023 and made other good-faith attempts to convince the City to abide by its contractual obligation to continue providing wastewater treatment services beyond that date, Mayor Strickland sent a letter to the mayors of Horn Lake and Southaven stating the City still intended to cease providing wastewater treatment services to the District on September 22, 2023. (Letter attached hereto as Exhibit "D.") This letter is a breach, anticipatory breach, and/or repudiation of the 1975 and 1983 Agreements, and other words, conduct, acts and omissions of the City.

25. Despite the City's continued insistence on its right to breach the parties' contract, the District engaged in continued efforts to reach a good-faith solution to the dispute throughout 2019.

26. These included hiring an engineering firm to take preliminary steps toward determining the feasibility of the District finding alternative arrangements for wastewater treatment, attempting to negotiate a reasonable new agreement with the City to extend service beyond 2023, and attempting to explain the District's position that the 1975 and 1983 Agreements do not authorize either party to unilaterally end the parties' contractual relationship.

27. The City has refused to alter its position and continues to assert its intention to cease providing wastewater treatment services on September 22, 2023, in contravention of its contractual obligations.

28. The City's unilateral decision to discontinue accepting and treating the District's wastewater on a date certain amounts to a total and unqualified refusal to perform the contract.

29. The consequences of the City's breach are dire. The process of constructing a new wastewater treatment facility will likely take the District ten years or more, as it will required seeking funding for an initial study of the District's needs, performing such a study, seeking funding for engineering design, completing engineering design, selecting and purchasing a site, working through the federal and state permitting process, seeking funding for construction, finalizing the design, and executing construction.

30. Cutting off the District in 2023 leaves the District with no feasible way of treating the wastewater generated by its thousands of customers for a period of at least several years. The City unilaterally refusing to accept the District's wastewater will result in a massive bypass (*i.e.*,

sewage overflow) near the Mississippi-Tennessee state line, which in turn will cause serious contamination to soil, groundwater, and surface water.

31. Moreover, the City's breach of its obligations costs and will cost the District money damages; the above-described process would cost tens of millions of dollars, while the long-term operation of a new treatment facility would be far more expensive than the parties' current arrangement, as operating a small wastewater treatment facility with low average daily flow would be exceedingly costly.

32. The District reasonably relied on promises, commitments, and representations, including conduct, acts, and omissions, of the City and its agents, before, during and after the 1975 and 1983 Agreements. The City has breached and failed to abide by such words, conduct, acts, and omissions to the detriment of the District, causing harm and injury to the District.

33. Based on the facts and circumstances alleged above, the District has suffered damages, harm, and injury, entitling it to legal or equitable relief including but not limited to money damages, injunctive relief, equitable relief, and/or declaratory relief.

WHEREFORE, PREMISES CONSIDERED, based on the facts and circumstances alleged, including the City's breach, anticipatory breach, and/or repudiation of contract, Plaintiff Horn Lake Creek Basin Interceptor Sewer District prays for the following relief:

a) That proper process issue and be served on Defendant City of Memphis, Tennessee;

b) That the Court enter a judgment requiring Defendant City of Memphis, Tennessee to pay unto the District money damages in an amount to be determined by the Court but no less than the difference between the cost of continuing to pay volumetric rates to the City under the 1975 Agreement and the cost of constructing and operating a new wastewater treatment facility, the exact value of which is to be determined at trial,

    and requiring the City to provide wastewater services beyond September 22, 2023 so as to allow the District to make alternative arrangements for treatment and disposal of its wastewater;

c) In the alternative, that the Court enter a judgment requiring Defendant City of Memphis, Tennessee to specifically perform its contractual and legal obligations under the 1975 and 1983 Agreements and other words, conduct, acts, and omissions of the City, specifically to continue to provide wastewater treatment services to the District beyond September 22, 2023;

d) In the alternative, that the Court exercise its authority to grant the District all general and equitable relief to which it is entitled, including injunctive relief, to remedy the situation, including but not limited to a judgment in equity forbidding Defendant City of Memphis, Tennessee from unilaterally cutting off the District's wastewater treatment services on September 22, 2023 as threatened;

e) In the alternative, that the Court enter a judgment declaring the rights, duties and obligations of the parties under the contracts alleged, as well as the words, acts, representations, and omissions of the City, including but not limited to a finding that the 1975 and 1983 Agreements and services referenced therein do not terminate on September 22, 2023;

f) That the Court award all costs, fees, and expenses to Plaintiff Horn Lake Creek Basin Interceptor Sewer District;

g) That the Court award to Plaintiff Horn Lake Creek Basin Interceptor Sewer District all pre-judgment interest to which it is entitled; and

h) That the Court grant any and all further relief, general and specific, legal and equitable, to which Plaintiff Horn Lake Creek Basin Interceptor Sewer District may be entitled.

Respectfully submitted, this the 20th day of December, 2019.

                                                HORN LAKE CREEK BASIN
                                                INTERCEPTOR SEWER DISTRICT

                                                By: /s/Michael O. Gwin

OF COUNSEL:

Michael Gwin (MSB # 5086)
Keith W. Turner (MSB # 99252)
W. Abram Orlansky (MSB # 104172)
Watkins & Eager PLLC
400 East Capitol Street
Jackson, Mississippi 39201
Post Office Box 650
Jackson, Mississippi 39205
Telephone:	(601) 965-1900
Facsimile:	(601) 965-1901
Email: mgwin@watkinseager.com
      kturner@watkinseager.com
      aorlansky@watkinseager.com

*Attorneys for Plaintiff Horn Lake Creek Basin Interceptor Sewer District*