## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

CITY OF MEMPHIS,

      Plaintiff,

v.                                                                          Case No. 2:19-cv-2864-MSN-cgc

HORN LAKE CREEK BASIN INTERCEPTOR
SEWER DISTRICT and
DESOTO COUNTY, MISSISSIPPI,

      Defendants.

---

HORN LAKE CREEK BASIN INTERCEPTOR
SEWER DISTRICT and
DESOTO COUNTY, MISSISSIPPI,

      Plaintiffs,

v.                                                                          Case No. 2:20-cv-2641-MSN-cgc

CITY OF MEMPHIS,

      Defendant.

---

## PRETRIAL ORDER

---

***Any remaining jurisdictional questions and the proper rulings thereon.***

      There are no remaining contested jurisdictional issues for this Court to resolve.

***A list of pending motions and the proper rulings thereon.***

      (1)    The City of Memphis' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 46] remains pending in Civil Action No. 2:20-cv-02641-MSN-cgc. As set forth in the briefing, the parties disagree with respect to the proper ruling thereon.

(2)      No motions *in limine* have been filed to date. The parties may file a small number of such motions before the date of trial given the potential for newly-produced evidence in light of the Court's ruling on the City's Motion for Summary Judgment [Doc. # 110]. However, the parties are working in good faith to resolve any such issues without the Court's involvement.

***A short summary of the case that may be read to the venire at the beginning of voir dire.***

N/A (non-jury trial)

***The respective contentions of the parties, including contentions with regard to the nature and amount of damages and with respect to liability.***

**City of Memphis:** On March 28, 2018, the City notified the District that "Memphis will no longer extend wastewater treatment and collection services to the District upon expiration of the agreement which will occur on September 22, 2023."  The City expressly requested that the District "develop and submit to Memphis for its review a detailed plan of action for the removal of the [District's] users from Memphis' sanitary sewer system along with a proposed schedule within the next six (6) months from the date of receipt" of the City's notice.  Seven (7) months later, in October 2018, City of Memphis Mayor Jim Strickland reiterated the City's position in letters addressed to the mayors of Southaven, MS and Horn Lake, MS.  Mayor Strickland even stated that the "City might be willing to make reasonable allowances to conditionally extend the termination date should the engineering, design, and construction required to complete the removal of the District's users not be feasible by September 22, 2023."  In total, the City gave the District over five (5) years to prepare for its eventual disconnection from the City's wastewater system.

Yet the District did nothing to prepare for the removal of its users from the City's wastewater system.  The District instead decided to fight the City's interpretation of the parties' wastewater treatment agreement, ultimately requiring the City to file its Complaint for Declaratory Judgment in December 2019.  (*See* ECF No. 1, Case No. 2:19-cv-02864-MSN-cgc).  The District

then followed in kind by filing its own lawsuit alleging breach and anticipatory breach of contract. (*See* ECF No. 1, Case No. 2:20-cv-02641-MSN-cgc).  The District had no legal basis to dispute that the parties' wastewater treatment agreement expired by its own terms on September 22, 2023. Moreover, to the extent there is any remaining question as to the viability of the District's anticipatory breach claim, the Court's recent ruling on the City's summary judgment motion establishes there is no basis for such a claim.

As the Court ruled, "the parties' intent, *as expressed in the unambiguous language of the Agreements*, was for the 1975 Agreement to be for a limited duration—40 years—which was subsequently extended by the 1983 Agreement.  Therefore, the 1975 Agreement, as extended by the 1983 Agreement, ends by its terms on September 22, 2023."  (ECF No. 110 at PageID 1221, Case No. 2:19-cv-02864-MSN-cgc) (emphasis added).  The Court's ruling establishes that, as a matter of law, the District had no basis to argue that the parties' wastewater treatment agreement extended beyond September 22, 2023.

Now, five (5) years after the City notified the District of its intent to not renew the parties' contract, the District claims that it needs an additional ten (10) years—or possibly longer—to remove its users from the City's wastewater system.  The Court should not be swayed by the District's pleas for help when the District did little during the interim to prepare for this situation. In fact, as of March 2021, the District had still not begun the process of seeking financing for the project nor had it begun the process of preparing a detailed design plan for the construction of an alternative wastewater treatment system.  The District has barely gotten any farther along in the process two years later, claiming that it is still working out an agreement with DeSoto County Regional Utility Authority (DCRUA) to construct an expansion of DCRUA's existing treatment facilities so as to accommodate the District.  Ultimately, the District has taken what should have

been a six (6) to seven (7) year project to construct a new wastewater treatment facility—based on the report of the City's expert—and prolonged such project by more than five (5) years. The District should thus be placed on an expedited time frame of six (6) to seven (7) years, at most.

The City further contends that the District should have to pay rates in accordance with the City's other wholesale customers for which equal services are provided. Contrary to the District's argument, the City is not "weaponizing sanitation" by seeking to require the District to pay rates in line with other wholesale customers. The District currently pays an extremely low rate of $0.96 per 1,000 gallons. Other municipalities that receive the same services from the City, such as Collierville, Lakeland, and Millington, all pay $3.32 per 1,000 gallons. Thus, the District currently pays over 80% less than other similarly situated wholesale customers. The City contends that the District should be required to pay a rate equal to the City's other wholesale customers who receive similar services.

**Defendants:** Defendants interpret their contracts with the City to continue beyond September 2023, but understand and acknowledge that the Court's ruling on the City's motion for summary judgment removes that issue from trial. As a result, trial is expected to deal mostly with the Court's equitable powers. In that context, Defendants' contentions are narrowed as follows.

As the Court's Order acknowledges, the District clearly cannot simply stop transporting wastewater in its interceptor while constructing a new facility. The parties agree that the issues before the Court to decide in equity are the length of time necessary for the District to continue discharging its wastewater to the City and the financial arrangement between the District and the City during such time. As previously stated to the Court, the District had already determined that it would disconnect from the City's system even while continuing to hold a good-faith belief in its own interpretation of the parties' contract, prior to the Court's Order of March 30, 2023. To that

end, the District has evaluated all options and has begun the inherently slow process of contracting with the existing DeSoto County Regional Utility Authority (DCRUA) to construct a $230-million expansion of its existing treatment facilities so as to accommodate District wastewater. The District has presented DCRUA with two draft contracts: one for long-term wastewater treatment service, and one for the joint financing of the necessary construction project to make it feasible for DCRUA to treat District wastewater. The District and DCRUA continue to negotiate the terms of those arrangements and to address political considerations to obtain the support of DCRUA's Board of Directors.

To borrow the Court's phrasing from the pretrial conference, the District's sole aim in this trial on the equities is to prevent the City from "weaponizing sanitation." The District understands that part of the formula for funding an expanded wastewater treatment plant and other necessary construction will involve increasing rates on sewer users. But the City's apparent position defies the entire notion of equity: that is, that the District should simply fund the entire $230 million project via bonds (and thus increased rates to users) so as to begin work as quickly as possible. Such an outcome would impose a massive increase in monthly household costs for all residents of Southaven and Horn Lake, Mississippi – some of whom do not even live within the District, none of whom had a hand in negotiating the parties' contract, and none of whom should in equity be forced to have their sewer rates skyrocket due to the dispute before this Court. It is particularly egregious for the City to take the position that the District should "just raise rates" when the City has received millions of dollars in federal funding to cover capital sewer costs over a period of

decades; indeed, according to a local news story, a recent study found Memphis utility customers pay the second-lowest rates in the country.[1]

The parties' experts have submitted competing timeframes for how long it should take to construct a new wastewater treatment facility with sufficient capacity to treat the District's sewage flow and discharge treated effluent into the Mississippi River. However, there is little true disagreement between the experts because the City's expert has opined that it would take six to seven years, and his analysis *does not include the time necessary to obtain funding*. The District's expert on the topic *did* include the time necessary for funding, and opined that "Under the absolute best of circumstances, it is possible the process could take as little as eight years in total; however, other factors entirely outside the District's control could just as easily result in a 13-year process instead."

As previously disclosed to the Court and to the City, the District has undertaken in earnest to obtain the funding necessary to expand DCRUA's existing Johnson Creek wastewater treatment facility. The process of obtaining public funding for (a portion of) a major infrastructure project is never immediate; and in all candor, an order from the Court requiring that the District fund and construct a new facility could, in itself, help facilitate the District's ability to obtain funding. But Memphis' stated position is self-defeating: if the District is forced to attempt to fund the approximately $230 million for the expansion project using bonds alone, the extent to which rates must be raised will make the revenue-based bonds much less likely to find willing underwriters. The District's ability to disconnect from the City could ultimately be *delayed* under the City's approach.

---

[1] Royer, David, "Study: Memphis pays 2nd-lowest utilities cost," WREG Memphis, November 29, 2021 (*available at* https://wreg.com/news/local/study-memphis-pays-2nd-lowest-utilities-cost/) (last visited April 1, 2023).

Instead, the District proposes that the following solution would be the most equitable. First, with respect to time: the District should be given a series of milestones in its efforts to establish an alternative to the City for its wastewater treatment needs. Rather than a hard deadline to complete the entire project, the District should have specific benchmarks it must meet and would accept any reporting requirements the Court deems appropriate to assure the Court that it is making good-faith efforts toward each benchmark. Specifically, the District should be given the following benchmarks:

- **Funding:** Twenty four months from the date of the Court's ruling on the triable issues to obtain sufficient funding to begin the next phases of the project. Such an order would, as alluded to above, likely be self-fulfilling in clarifying the urgency of the situation to those elected officials from whom the District must seek funding. The District believes it can, under optimal circumstances, obtain as much public funding from the State of Mississippi and/or the federal government as possible within 24 months, and thereafter complete a bond sale for the remaining costs.

- **Permitting:** Eighteen months after the funding deadline to complete its permitting process (which can begin during the 24 months of funding). This is the arena in which the most issues outside the District's control lurk, which is why the District suggests it should provide periodic reports to the Court to determine whether additional time may be necessary to complete each benchmark.

- **Design/Development:** Three and a half years following the permitting deadline to complete both the design process and the development process, which includes land acquisition and easement acquisition. Again, periodic reporting should be implemented to

ensure the District can show both the Court and the City its good-faith efforts to complete the project.

- **Construction:** Finally, an additional three years in which to complete construction of the two pump stations, the force main, and the expanded Johnson Creek facility, and to begin operations.

That is a total of 10 years from the date of the Court's order, of course with the caveat that if a benchmark is reached early or must be delayed despite the District's good-faith efforts, the total time would be adjusted accordingly. It should be noted that because throughout this period the District will be paying *both* its fees to the City for wastewater treatment *and* debt service on any bonds or loans obtained for the construction project, it is inherently in the District's interest to disconnect from Memphis as quickly as possible. Therefore, the District would willingly accept any additional requirement that it make a good-faith effort to meet each benchmark early where possible.

The second issue within the Court's equitable consideration is money – specifically, how much of it the District should pay to the City for continued wastewater treatment during the above-described time period. Here, the District re-emphasizes the Court's admonition against the "weaponization of sanitation." The City stated explicitly at the pretrial conference that the District should have to pay more in treatment fees after September 2023 as a sanction for not having made what the City would consider sufficient progress toward a new solution over the past five years. But it is inequitable to expect the District to pay a penalty for first attempting "diplomacy" with the City, in an effort to find a solution that would not cause such a massive expenditure of public money. Similarly, in the context of an economic slowdown related to a global pandemic, the District's continued good-faith belief that the parties' contract was not intended to end in

8

September of this year, and the political realities of contracting with DCRUA for future service, the District's efforts to this point have been more than reasonable.

Pursuant to the 1975 Agreement, "It is the intention of the parties that that the City provide the service at its actual cost and the rates will reflect this intention." The City has calculated the "actual cost" of providing service to the District using the same formula since 1980. It is the District's position that, to facilitate its efficient disconnection from the City's wastewater system by ensuring its ability to pay for the bonds on the necessary DCRUA facility expansion project, the City should continue to calculate the District's wastewater treatment rate in the same manner as it has for 43 years. Under the express terms of the 1975 Agreement, if at any time the City believed its formula no longer reflected the actual cost of providing service to the District, it could have changed to a different formula at any time.[2] It has never done so, which strongly indicates that any new calculation that substantially increases the District's sewer fees paid to the City would be nothing more than a punitive measure imposed by the City – *i.e.*, a weaponization of sanitation.

***A comprehensive written statement of uncontested facts that may be stipulated and read to the jury (possible sources of these agreed facts are the pleadings, discovery, or admission of counsel).***

Although this matter will be tried without a jury, the parties submit the following undisputed facts for the Court's benefit and in an effort to help make trial more efficient. The undisputed facts relevant only to the issues already decided in the Court's order on the City's motion for summary judgment [Doc. # 110] are not listed here.

(1)    The Horn Lake Creek Drainage basin is an approximately 53.5-square-mile geological feature where the water drains north by gravity flow from DeSoto County, Mississippi

---

[2] "The City will provide an explanation of each proposed increase, including figures on which it is based at least 30 days in advance of the effective date."

to Shelby County, Tennessee. Forty-four square miles of the Basin are in DeSoto County, Mississippi and 9.5 square miles are in Shelby County, Tennessee.

(2)     The District was responsible for the construction of the portion of the Horn Lake Interceptor in DeSoto County, and remains responsible for its operation and maintenance.

(3)     The City was responsible for the construction of the portion of the Horn Lake Interceptor in Shelby County, and remains responsible for its operation and maintenance.

(4)     The parties entered into a Sewage Treatment Agreement dated February 6, 1975, under which the City would provide treatment of wastewater delivered to it by the District in exchange for fee payments based on the volume of wastewater delivered.

(5)     The parties entered into a Supplemental Agreement dated September 22, 1983.

(6)     DeSoto County, Mississippi's role in both Agreements is as guarantor of the District's obligations thereunder.

(7)     Pursuant to the City's formula for calculating the District's sewage fees payable to the City under the 1975 Agreement, the District pays its share of capital costs (*i.e.*, debt payments relating to capital projects such as improvements and expansions) related to the Interceptor in Tennessee and the TE Maxson Wastewater Treatment Facility.

(8)     On March 28, 2018, Robert Knecht, Director of Public Works for the City, sent a letter to the District stating that "Memphis will no longer extend wastewater treatment services to the District upon expiration of the agreement which will occur on September 22, 2023."

(9)     Mr. Knecht's March 2018 letter further requested the District to "develop and submit to Memphis for its review a detailed plan of action for the removal of its users from Memphis' sanitary sewer system along with a proposed schedule within the next six (6) months from the date of receipt of this letter."

(10)    The District did not submit the requested plan of action within 6 months of Mr. Knecht's letter.

(11)    The mayors of the Cities of Memphis, Southaven, and Horn Lake held an in-person meeting in August 2018 to discuss the sewer services provided by the City of Memphis to the District.

(12)    Mayor Jim Strickland of Memphis stated in letters to the mayors of Horn Lake and Southaven dated October 10 and October 29, 2018, that the City of Memphis would not reconsider its position.

(13)    Mayor Strickland's October 2018 letters further stated that: "The City might be willing to make reasonable allowances to conditionally extend the termination date should the engineering, design, and construction required to complete the removal of the District's users not be feasible by September 2023."

(14)    On December 19, 2018, the District's Engineer Tim Verner sent an email to Tracy Huffman, engineer for the DeSoto County Regional Utility Authority (DCRUA) to request a meeting to discuss the possibility of the District "hammer[ing] out an agreement with DCRUA and make plans for DCRUA's necessary plant expansion."

(15)    On June 24, 2019, Mr. Verner sent a letter to Mr. Knecht, explaining the District's position that it hoped to remain connected to the City's system over the coming years while also setting forth steps the District had taken toward establishing wastewater treatment for the District in Mississippi.

(16)    The City of Memphis continues to this day to accept, treat, and dispose of wastewater collected by the District in accordance with the terms of the 1975 and 1983 Agreements.

(17)     The District continues to this day to timely pay the entirety of its fees and capital costs to the City pursuant to the parties' contract.

***Contested issues of fact.***

•    **The time necessary for the District to disconnect from the City's wastewater treatment system.** Given the Court's intention to address the equities between the parties beyond September 22, 2023 in light of the Court's Order on summary judgment, it is relevant how long it would reasonably take the District to fund, design, permit, and construct a new or expanded wastewater treatment facility, piping, pumps and storage facilities to allow it to disconnect from the Memphis system. The City's expert witness has opined it would take six to seven years in total, whereas Defendants' expert witness opines it could take up to 13 years.

•    **The rate for services that the District should pay to the City for services provided following the expiration of the parties' wastewater treatment agreement.**  Given the Court's intention to address the equities between the parties beyond September 22, 2023 in light of the Court's Order on summary judgment, it is relevant what rate should be paid by the District to the City for continued services following the expiration of the wastewater treatment agreement. The City contends that the District should pay a rate equal to that of other wholesale customers who received the same services as the District—$3.32 per 1,000 gallons.  Defendants contend there is no basis in the record for the notion that "similarly-situated" wholesale sewer customers pay the City $3.32 per 1000 gallons. First, there are no similarly-situated users, *i.e.* wholesale users of the Memphis sewer system who must simultaneously fund, design, and construct new 13-MGD treatment facilities. Second, at least two other wholesale users charge *retail* rates (*i.e.*, the rates charges to end users that must cover not only the fees paid to the City for treatment, but also operation and maintenance of the customer's own wastewater collection system) that are lower

than that figure.[3] Instead, Defendants propose that the City has been calculating the actual cost of treating the District's wastewater using the same formula for 43 years, and that formula should continue to govern the District's rate paid to the City.

**_Contested issues of law._**

Given the Court's ruling on the City's motion for summary judgment [Doc. # 110], the trial is expected to be one conducted in equity. The parties contest the length of time the District should be given to disconnect from the City's system, and the amount of money the City should be allowed to charge the District for continued wastewater treatment while such efforts are underway.

**_A list of exhibits (except documents for impeachment only) to be offered in evidence by the parties, and to the extent possible, a stipulation on their admissibility. If the parties cannot stipulate, then the objections must be noted in the proposed pretrial order._**

See Plaintiff's and Defendants' Exhibit Lists, to be filed within 24 hours of this filing.

**_A list of witnesses for the parties, indicating those who will be called, in the absence of reasonable notice to opposing counsel to the contrary, and those who only may be called._**

(1)    Plaintiff's Witnesses:

   a.   Robert Knecht (may call)

   b.   Scott Morgan (will call)

   c.   Joshua Balentine (may call)

   d.   Brad Davis (will call)

   e.   Gary Shambaugh (will call)

   f.   Richard Michelfelder (will call)

---

[3] Germantown's published retail rate, for instance, is $15.48 per 5,000 gallons, which converts to $3.10/1000 gallons (https://www.germantown-tn.gov/Home/Components/News/News/7178/30?npage=2&arch=1). Bartlett's published retail rate is $9.87 for the first 2,000 gallons and $1.89 for each additional 1,000 gallons, meaning a household using 5,000 gallons per month pays an average of $2.97 per 1,000 gallons (https://www.cityofbartlett.org/DocumentCenter/View/67/Water-Rates?bidId=).

(2)     Defendants' Witnesses:

    a.  Tim Verner (will call)

    b.  Terry Mitchell (will call)

    c.  Daniel Jackson (will call)

    d.  Mayor Darren Musselwhite (will call)

    e.  Tracy Huffman (will call)

    f.  Nick Schorr (will call)

***Deposition testimony.***

See Plaintiff's and Defendants' Exhibit Lists, to be filed within 24 hours of this filing.

***An estimate of the length of trial.***

The parties agree that the four days presently set (April 10-12 and April 20, 2023) are sufficient for the trial.

***A statement indicating whether the case is a jury trial or non-jury trial.***

Non-jury.

***The amount of the ascertainable damages. The listing of the amount of damages shall not constitute an agreement as to the recoverability of same unless so stated.***

None.

***A list of the names of all attorneys interested in the case and copies of all interested firms' letterheads.***

Attorneys for the City of Memphis:
    a)     Bruce A. McMullen
    b)     Carmalita Carletos-Drayton
    c)     Pete A. Brunson
    d)     Karen L. Glover

Attorneys for the District:
    a)     Mary Lee Walker Brown
    b)     William A. Brown
    c)     W. Abram Orlansky

d)    Keith W. Turner
e)    Michael Gwin

Attorneys for DeSoto County:
a)    Samuel Barber
b)    Anthony Nowak

Letterhead for all attorneys has been provided at Document # 102.

***A list of any special equipment such as video cassette recorders, overhead projectors, easels, computers, etc. that the parties intend to bring for use at the trial.***

The parties do not expect to bring any special equipment for use at the trial. However, the parties do desire to use the Court's VGA monitors.

**IT IS SO ORDERED**, this 7th day of April, 2023.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

15